## DECLARATION OF MARCY LAHART

Pursuant to 28 U.S.C. § 1746, MARCY LAHART declares as follows:

1. My name is MARCY LAHART. I am over the age of 18 and legally competent to give attestations herein. I have personal knowledge of the matters set forth herein.

2. I am an attorney, licensed in the state of Florida, Florida bar number 0967009.

3. On February 17, 2017 I sent an email to Park Place Property Manager Patty Jamar which said:

> To whom it may concern: I represent George Friedel in reference to his emotional support animal Maggie. Please see the attached letter from my client's physician verifying his need to live with Maggie as his emotional support animal. Because Maggie is an assistance animal Mr. Friedel's right to live with her is protected by the fair housing act. Maggie is a friendly dog that does not pose any threat to anyone, and effort to remove Maggie will be met with a prompt claim for disability discrimination. Please be in touch if I may provide any additional information regarding this matter.

4. A copy of my email to Ms. Jamar is attached as Exhibit A. A copy of Dr. Morel's letter is attached as Exhibit B.

5. On January 19th, 2017 an email from Attorney Brian Chase with an attached letter. The letter is attached hereto as Exhibit C. The letter invited me to provide him authority indicating that an animal who previously engaged in an attack must be allowed to remain on a community as an emotional support animal.

6. On January 30, I emailed Mr. Chase apologizing for my delay in responding due to an illness, and directing him to a portion of 24 CFR Part 5, HUD's final rule regarding Pet Ownership for the Elderly and People With Disabilities provides:

> *Fair Housing Act, a housing provider may exclude an assistance animal from a housing complex when that animal's behavior poses a direct threat and its owner takes no effective action to control the animal's behavior so that the threat is mitigated or eliminated. The determination of whether an assistance animal poses a direct threat must rely on an individualized assessment that is based on objective evidence about the specific animal in question, such as the animal's current conduct or a recent history of overt acts.*
>
> *The assessment must consider the nature, duration, and severity of the risk of injury; the probability that the potential injury will actually occur; and whether reasonable modifications of rules, policies, practices, procedures, or services will reduce the risk. In evaluating a recent history of overt acts, a provider must take into account whether the assistance animal's owner has taken any action that has reduced or eliminated the risk. Examples would include obtaining specific training, medication, or equipment for the animal.*
>
> *This direct threat provision of the Fair Housing Act requires the existence of a significant risk—not a remote or speculative risk. Accordingly, the determination cannot be the result of fear or speculation about the types of harm or damage an animal may cause, or evidence about harm or damage caused by other animals (See HUD/DOJ Joint Statement).*

In that email I also told Mr. Chase that:

> Since Maggie was involved in a incident with another dog my clients have successfully taken actions to socialize Maggie with other animals. Please see the recent letter from Maggie's doggie day care attesting to her good nature and the fact that she interacts with many other dogs without an issue. Maggie has no "recent

history of overt acts" of aggression towards people or other dogs, and accordingly cannot be excluded from Park Place based upon an isolated incident that occurred more than a year ago.

7. A copy of my email is attached hereto as Exhibit D. The letter from Maggie's doggie day care center is attached as Exhibit E.

8. On February 7, 2017 I received a response from Mr. Chase as follows:

   While I appreciate your response, the dog in question hasn't received any additional training. Moreover, the attack occurred last season, and the dog was immediately removed. The last time the dog was in the park it had to leave because it attacked another dog. My client faces significant liability due to the presence of a dog that was previously removed from the community because of its aggressive behavior. If the dog were to attack another dog or a person, both your client and my client would face liability. As a result, we must decline this particular dog as an emotional support animal. As previously stated, your client is able to have a different emotional support animal, and should submit additional information for that specific animal, if desired.

9. At no time have I ever been asked to provide additional information regarding Mr. Friedel's disability or need for Maggie as his emotional support animal. Similarly, I was never asked about measures the Friedel's had taken to prevent additional problems with Maggie or asked if they would be willing to take measures such as obtaining additional training or specific equipment.

10. On February 15, 2017 my clients were served a "Statutory Notice to Cure." [DE 1, Exhibit A]

11. Mr. Chase's correspondence to me and the answers and affirmative defenses to the complaint insinuate that Mr. Friedel simply conjured up heart disease and depression to avoid having to remove his dog. Specifically the Second Affirmative Defense entitled "Lack of Disability" and alleges "Plaintiff does not suffer from a "handicap" as defined in

42 U.S.C.§3602(h), and only visited a doctor for an alleged "handicap" after his animal attacked other animals and was banned from the park." [DE 5, pg 5]

12. Hopeful that additional information would convince Mr. Chase and his client that Mr. Friedel is not faking his disability, on May 12, 2017 I provide additional information, specifically a letter from Mr. Friedel's family physician of more than a decade stating that George Friedel has been treated for heart disease and depression in the past and requesting "that all parties come to an agreement that ensures the safety of all other persons and animals; and that allows Mr. Friedel and Maggie to remain in their house together. Otherwise, I am concerned that Mr. Friedel's conditions may worsen." The letter, attached hereto as Exhibit F, was apparently insufficient to convince Park Place to reconsider the decision to evict the Friedels if Maggie is not removed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of July, 2017.

_____
Marcy LaHart